UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 2:26-cv-02091-DOC-AJR					Date: March 9, 2026

Title: Alison Vazquez v. Kristi Noem et al.

PRESENT: THE HONORABLE DAVID O. CARTER, JUDGE

| Priscilla Deason for Karlen Dubon | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):    ORDER GRANTING TEMPORARY RESTRAINING ORDER [4]**

On February 26, 2026, Petitioner Alison Vazquez ("Petitioner") filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ("Petition"). (Dkt. 1). On the next day, February 27, Petitioner filed an ex parte application for a temporary restraining order ("App."). (Dkt. 4). For the reasons stated below, the Application is **GRANTED**.

I.   BACKGROUND

   A.   Facts

Petitioner is a transgender woman from Mexico who has lived in the United States for nearly a decade pursuant to a final grant of deferral of removal under the Convention Against Torture. App. at 1. On February 26, 2026 she was detained during a routine check-in with Immigration and Customers Enforcement (ICE). *Id*. ICE did not identify any violation of supervision, any changed circumstances that led to this detention, or how removal is likely in the reasonably foreseeable future. *Id.* Petitioner is currently in ICE custody at the Santa Ana substation—at risk of being transferred to the Adelanto ICE detention facility and being housed with men, a potentially fatal outcome. *Id.*

Throughout her childhood and young adult life, Petitioner was targeted for being transgender in Mexico. *Id.* She was beat by police officers, sexually abused by her uncle, and attacked by men who whipped her genital area and yelled homophobic slurs. *Id*. To

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 5:25-cv-02668-DOC-RAO                                                         Date: March 9, 2026

Page 2

escape this abuse, Petitioner entered the United States in around 1997. *Id.* at 3. She lived with her U.S. citizen brother in Nebraska and then she moved to Santa Ana in 2004 where she has resided since.

Petitioner was removed from the United States to Mexico in 2003 after a misdemeanor DUI conviction and again in 2004 after immigration authorities encountered her in her workplace. *Id.* After each removal, Petitioner again returned to the United States fearing for her life as a transgender woman in Mexico. *Id.* On May 9, 2017 an Immigration Judge granted Petitioner deferral of removal under the Convention Against Torture and released her under an order of supervision which included periodic reporting requirements. *Id*. at 5. Petitioner's order bars her removal to Mexico and remains in effect today. For nearly the last ten years Petitioner has never missed a scheduled check-in with ICE and complied with supervision instructions. *Id.*

Petitioner received a misdemeanor DUI conviction in 2003. *Id.* at 3. In 2009, Petitioner received a misdemeanor prostitution conviction. *Id*. She also pled guilty to assault with a deadly weapon (non-firearm) and misdemeanor vandalism for less than $400 in damage in 2011. *Id.* Since 2011, Petitioner has not engaged in any new criminal conduct. *Id.* at 12.

## II.    LEGAL STANDARD

A plaintiff seeking preliminary injunctive relief "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in her favor, and that an injunction is in the public interest." *Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009); *see Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Alternatively, "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) (internal quotation omitted). A "serious question" is one on which the movant "has a fair chance of success on the merits*.*" *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984).

## III.    DISCUSSION

### A.    Likelihood Of Success On The Merits.

Petitioner argues that her detention is unlawful because under *Zadvydas v. Davis* and that Respondents cannot demonstrate that her removal is reasonably foreseeable. App

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 5:25-cv-02668-DOC-RAO                              Date: March 9, 2026

Page 3

at 8. Further, Petitioner argues that ICE has not followed its own regulations. *Id*. And finally, Petitioner argues that due process requires ICE to provide notice and an opportunity to be heard before removal to a third country. *Id.*

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. Amend. V. Due process rights extend to noncitizens present in the United States, including those subject to final removal orders. *Zadyvadas v. Davis*, 533 U.S. 678, 693-94 (2001) ("But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all persons within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent. Indeed, this Court has held that the Due Process Clause protects an alien subject to a final order of deportation, though the nature of that protection may vary depending upon status and circumstance." (cleaned up)). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

Title 8, United States Code, Section 1231 governs the detention and removal of noncitizens who have been ordered removed. This statute directs the Attorney General to remove the noncitizen "within a period of 90 days" and authorizes detention during this removal period. 8 U.S.C. § 1231(a). However, if "removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.

If released, an alien subject to a final order of removal must comply with certain conditions of release. 8 U.S.C. § 1231(a)(3), (6). The revocation of release is governed by 8 C.F.R. §§ 241.13(i)(3) and 241.4(l), which require that "upon revocation" the alien "be notified of the reasons for revocation of his or her release" and given "an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. §§ 241.13(i)(3), 241.4(l); *see Constantinovici v. Bondi*, 2025 WL 2898985, at *4-5 (S.D. Cal. Oct. 10, 2025). "Both 8 C.F.R. § 241.13 and 8 C.F.R. § 241.4 'were intended to 'provide due process protections to noncitizens following the removal period as they are considered for continued detention, release, and then possible revocation of release'" *Constantinovici*, 2025 WL 2898985, at *5 (cleaned up) (quoting *Santamaria Orellano v. Baker*, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025)).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 5:25-cv-02668-DOC-RAO                                    Date: March 9, 2026

Page 4

The court finds the record before the court is sufficient to show that Petitioner is likely to succeed on the merits of his claims for failure to comply with C.F.R. §§ 241.13(i)(3) and 241.4(l). See *Winter*, 555 U.S. at 20. "It is well-established that government agencies are required to follow their own regulations." *Constantinovici*, 2025 WL 2898985, at *6 (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)); *United States v. Ramos*, 623 F.3d 672, 683 (9th Cir. 2010) ("It is a well-known maxim that agencies must comply with their own regulations."). "Numerous district courts, including courts in the Ninth Circuit, 'have determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered.'" *Constantinovici*, 2025 WL 2898985, at *6 (quoting *Rokhfirooz v. Larose*, 2025 WL 2646165, at *4 (S.D. Cal. Sept. 15, 2025)) (collecting cases). Here, Petitioner was not told why she was being re-detained.. As such, Respondents did not comply with the applicable federal regulations. The court finds that Petitioner demonstrates she is likely to succeed on the merits of her claims under these regulations. *See Winter*, 555 U.S. at 20.

For nearly a decade, Petitioner claims she has complied with her Order of Supervision and that there have been no violations. Respondents now have the burden to establish changed circumstances that make removal significantly likely in the reasonably foreseeable future and have not yet done so. *Sun v. Noem,* 2025 WL 2800037, at *2 (S.D. Cal. Sept. 30, 2025) ("ICE's own regulations . . . place the burden on ICE to show changed circumstances that make removal significantly likely in the reasonably foreseeable future."); *Roble v. Bondi*, 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025) (similar); *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 150 n.2 (D. Mass. 2025) (similar). In particular, the absence of any travel documents suggests that Petitioner is not going to be imminently removed. *See Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("Respondents' intent to eventually complete a travel document request for Petitioner does not constitute a changed circumstance" and "does not make it significantly likely he will be removed in the foreseeable future."). It is not sufficient for ICE to merely state that that they have the ability and means to effectuate removal. Accordingly, the court finds that Petitioner demonstrates she is likely to succeed on the merits of her claims. *See Winter*, 555 U.S. at 20.

### B.    Irreparable Injury

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)

Case 2:26-cv-02091-DOC-AJR   Document 5   Filed 03/09/26   Page 5 of 7   Page ID #:85

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 5:25-cv-02668-DOC-RAO | Date: March 9, 2026 |

Page 5

(quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Where, as here, the "alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)). Indeed, "unlawful detention certainly constitutes extreme or very serious' damage, and that damage is not compensable in damages." *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017).

Petitioner's transgender status places her uniquely at a significantly higher risk of sexual, physical, and psychological violence—the very things she was hoping to escape in Mexico and part of the reason she was afforded protections against being sent back. By remaining in custody, she faces disproportionate risks to her health and safety.

### C. Balance of Equities and Public Interest

"A plaintiff's likelihood of success on the merits of a constitutional claim also tips the merged third and fourth factors decisively in his favor." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023); *see California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) ("When the government is a party, the last two factors merge."). And "[i]t is always in the public interest to prevent the violation of a party's constitutional rights." *Cal. Chamber of Commerce v. Council for Educ. and Research on Toxics*, 29 F.4th 468, 482 (9th Cir. 2022) (cleaned up). Indeed, "public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005); *Junior Sports Mags. Inc. v. Bonta*, 80 F.4th 1109, 1120 (9th Cir. 2023) (explaining that when a party shows a likelihood of success on the merits of a constitutional claim, "the remaining *Winter* factors favor enjoining the likely unconstitutional law").

Here, Petitioner has demonstrated a likelihood of success on the merits so the third and fourth factors also tilt in her favor.

### D. Bond Requirement

Federal Rule of Civil Procedure 65(c) requires that, prior to granting injunctive relief, the Court require a movant to pay security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." "Despite the seemingly mandatory language, Rule 65(c) invests the district court with discretion as to the amount of security required, if

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 5:25-cv-02668-DOC-RAODate: March 9, 2026

Page 6

any." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)) (quotation modified). Accordingly, the Court waives the bond requirement here, as it is unlikely that the government will incur any significant cost and requiring a bond "would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public." *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 738 (C.D. Cal. 1996) (citation omitted).

### IV.CONCLUSION

For the above reasons, the Court **GRANTS** Petitioner's Request for a Temporary Restraining Order. The Court **ORDERS** that
1. Respondents shall release petitioner forthwith and shall file a Notice of Compliance within twenty-four (24) hours of releasing petitioner.
2. Respondents may not re-detain Petitioner without following the policies and procedures set forth in 8 C.F.R §§ 241.4 and 241.13.
3. Respondents may not move Petitioner outside of the Central District of California during the pendency of Petitioner's habeas corpus petition and all other matters in this case.
4. Respondents may not move Petitioner to a third country without providing Petitioner with her due process rights and allowing her to seek humanitarian protection.
5. Respondents shall file their opposition to the Preliminary Injunction Application by no later than March 13, 2026. Failure to file their opposition by the deadline set forth above shall be deemed as consent to the granting of the Preliminary Injunction Application.
6. Petitioner shall file her Reply in support of her Preliminary Injunction Application by no later than March 20, 2026.
7. The court shall decide, after reviewing the parties' papers, whether to hold a hearing on the Preliminary Injunction Application or take the Preliminary Injunction Application under submission.

The Clerk shall serve this minute order on the parties.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 5:25-cv-02668-DOC-RAO　　　　　　　　　　　　　Date: March 9, 2026

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 7

MINUTES FORM 11　　　　　　　　　　　　　　　　Initials of Deputy Clerk:
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　pd/kdu
CIVIL-GEN